Franklin E. SKEPTON

v.

COUNTY OF BUCKS, PENNSYLVANIA, Andrew L. Warren and Carl F. Fonash, in their official capacities as Commissioners of Bucks County, Elaine P. Zettick, Peter A. Naccarato, P.E., O'Donnell and Naccarato, Inc., McClymont Associates, Vaughn Organization.

No. 84–4395.

United States District Court,
E.D. Pennsylvania.

Feb. 19, 1986.

---

Harris F. Goldich, King of Prussia, Pa., for plaintiff.

Richard D. Adamson, Morrisville, Pa., for defendants Naccarato and O'Donnell & Naccarato.

## OPINION

LUONGO, Chief Judge.

Plaintiff Franklin E. Skepton was the general contractor for the construction of a new correctional facility for Bucks County, Pennsylvania. Shortly after he began work on the project, his contract was terminated. On September 13, 1984 he filed suit against Bucks County, certain County Commissioners, and private parties who were involved in the project. He asserted claims under the antitrust laws, 42 U.S.C. § 1983, the First Amendment and the due process clause of the Fourteenth Amendment. In an Opinion and Order dated July 18, 1985 I dismissed the complaint for failure to state a cause of action, granting plaintiff leave to amend his claims under § 1983 and the First Amendment if he could do so within the strictures of Fed.R. Civ.P. 11. *Skepton v. County of Bucks*, 613 F.Supp. 1013 (E.D.Pa.1985). Plaintiff has now filed an amended complaint, which defendants Peter A. Naccarato, P.E. and O'Donnell & Naccarato, Inc. have moved to dismiss. For the reasons stated below, the motion will be denied.

The allegations of the amended complaint, which I must accept for the purposes of this motion, are as follows. Defendants O'Donnell & Naccarato, a structural engineering firm, and Peter Naccarato, an engineer and an agent of O'Donnell & Naccarato, were employed by Bucks County in connection with the correctional facility project.[1] On March 22, 1983, Skepton was awarded a contract for general construction of the project. When he began excavation work, he encountered topsoil depths of twelve to twenty-four inches, as opposed to the four inches reported by the County's designated soils engineer.

---

1. The original complaint alleged that Naccarato acted as Project or Construction Manager. Complaint at ¶ 14.

Skepton informed the County Commissioners and Naccarato of the discrepancy. Because they refused to permit him to replace the soils engineer, he, at his own expense, hired an independent soils testing agency. The agency reported topsoil at a depth of twelve to twenty-four inches. The amended complaint further alleges that on April 13, 1983 Skepton informed Naccarato of the agency's findings. Skepton claims Naccarato directed him to remain silent and to "play ball" or someone else would build the prison. Naccarato also offered to arrange for the award of extra work to Skepton if he remained silent. At an April 18 meeting of the Commissioners, Naccarato and other project participants, Skepton announced that a building constructed according to existing contract specifications, without removal of the excess topsoil, would be structurally unsound. According to the amended complaint, Skepton was directed to continue with construction as specified and to remain silent about the problem he had encountered. He agreed to continue, but declared that he would make a public announcement concerning the defective specifications. The next day he informed the building inspector of Doylestown Township that the County's specifications were defective and probably in violation of the Township's building code. On April 22, Skepton was directed to suspend operations at the project site. He alleges that defendants thereafter held a closed meeting and decided to terminate his contract. The contract was terminated April 25, 1983.

According to Skepton, he was removed from the project because he intended to and did publicize the defects in the County's specifications. He alleges that the termination of his contract violated his First and Fourteenth Amendment right to "speak out freely as to matters of great public importance and concern." Amended Complaint at ¶ 36.

In order to recover, plaintiff must establish that defendants, acting under color of state law, terminated his contract on a basis that infringed his constitutionally protected right to freedom of speech. *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684,

75 L.Ed.2d 708 (1983); *Robb v. City of Philadelphia*, 733 F.2d 286, 295 (3d Cir. 1984). Defendants Naccarato and O'Donnell & Naccarato have moved to dismiss the complaint on the ground that they did not act under color of state law. According to the Supreme Court, however, "'an otherwise private person acts 'under color of' state law when engaged in a conspiracy with state officials to deprive another of federal rights." *Tower v. Glover*, 467 U.S. 914, 104 S.Ct. 2820, 81 L.Ed.2d 758 (1984). *See also Dennis v. Sparks*, 449 U.S. 24, 27–28, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980); *Darr v. Wolfe*, 767 F.2d 79, 80 (3d Cir.1985). Plaintiff, to survive a motion to dismiss, must allege with sufficient factual particularity that the private and state actors "directed themselves toward an unconstitutional act by virtue of a mutual understanding or agreement." *Hauptmann v. Wilentz*, 570 F.Supp. 351, 382 (D.N.J.1983), *aff'd mem.*, 770 F.2d 1070 (3d Cir.1985). *See also Annunziato v. The Gan, Inc.*, 744 F.2d 244, 250–52 (2d Cir.1984); *Tarkowski v. Robert Bartlett Realty Co.*, 644 F.2d 1204, 1206–07 (7th Cir.1980); *Chicarelli v. Plymouth Garden Apartments*, 551 F.Supp. 532, 539–40 (E.D.Pa.1982).

Although the facts as set forth in Skepton's amended complaint do not directly establish the existence of an agreement between the moving defendants and Bucks County officials, they could, if proven, constitute adequate circumstantial evidence of conspiracy. *See Hauptmann*, 570 F.Supp. at 382 (conspiracy may be established through circumstantial evidence). Plaintiff alleges that Naccarato, and therefore his principal, O'Donnell & Naccarato, worked closely with Bucks County Commissioners in connection with the prison project. The amended complaint does not describe Naccarato's precise role. For purposes of this motion, however, I find it reasonable to infer that Naccarato, as Project Manager, had supervisory responsibilities.

Skepton asserts that Naccarato threatened to have his contract terminated if he publicized the excess topsoil problem. This, if proven, could constitute evidence that Naccarato's position gave him a voice in whether Skepton would be retained as

general contractor, and that Naccarato felt Skepton's contract should be terminated if he did not cooperate. Skepton further alleges that Naccarato participated in the meeting at which Skepton announced the topsoil problem and his intent to publicize it, and in the meeting at which the Commissioners decided to terminate Skepton's contract.

As the moving defendants contend, it is not enough for Skepton to show that the private and state actors had a common goal, or that the private parties attempted to influence governmental action. *See, e.g., Annunziato,* 744 F.2d at 251–52; *Scott v. Greenville County,* 716 F.2d 1409, 1424 (4th Cir.1983); *Hauptmann,* 570 F.Supp. at 384; *Tarkowski,* 644 F.2d at 1206; *Chicarelli,* 551 F.Supp. at 539–40. Here, however, Skepton's factual assertions suggest that Naccarato was intimately involved in the County Commissioners' administration of the prison project. The allegations in the amended complaint, if proven, could establish that Naccarato had both the opportunity and the inclination to be a "willful participant" in the Commissioners' decision to terminate Skepton's contract. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 1605–06, 26 L.Ed.2d 142 (1970). *See also Robb,* 733 F.2d at 295 & n. 3; *Black v. Bayer,* 672 F.2d 309, 318 (3d Cir.), *cert. denied,* 459 U.S. 916, 103 S.Ct. 230, 74 L.Ed.2d 182 (1982); *Three Rivers Cablevision, Inc. v. City of Pittsburgh,* 502 F.Supp. 1118, 1135 (W.D.Pa.1980). Skepton's allegations are thus sufficient to withstand defendants' motion to dismiss.

Plaintiff's allegation that he was deprived of a constitutionally protected right also passes muster at this preliminary stage, and defendants have not contended otherwise. The law is clear that a government entity cannot deprive a person of a benefit on a basis that infringes his constitutionally protected interest in freedom of speech. *Connick,* 461 U.S. at 142, 103 S.Ct. at 1687; *Johnson v. Lincoln University,* 776 F.2d 443, 450 (3d Cir.1985); *Robb,* 733 F.2d at 295. A public employee's speech is protected if it relates to matters of public concern. *Connick,* 461 U.S. at 146, 103 S.Ct. at 1689–1690. Skepton claims he intended to and did disclose information showing that the County's specifications for the prison project would result in a dangerously defective building. The safety and structural soundness of a County correctional facility is clearly a matter of public concern. *See Czurlanis v. Albanese,* 721 F.2d 98, 104 (3d Cir.1983) (plaintiff's challenge to government practices "he considered inefficient, wasteful, and possibly fraudulent" is protected as speech involving matters of public concern). *See also Brasslett v. Cota,* 761 F.2d 827, 844 (1st Cir.1985); *Monsanto v. Quinn,* 674 F.2d 990, 996–97 (3d Cir.1982). Skepton's claim that he was discharged in retaliation for exposing governmental inefficiency states a cause of action under § 1983.

Naccarato and O'Donnell & Naccarato have also requested an award of sanctions under Fed.R.Civ.P. 11. While I conclude that the allegations of the amended complaint are sufficient to survive this motion to dismiss, and that sanctions are thus not warranted at this stage, I will reserve for another day the question whether plaintiff's allegations have a sufficient factual basis to satisfy the requirements of Rule 11.

